UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Maria Del Socorro Quintero Perez, CY, a Minor, and BY, a Minor, | Case No.:  13cv1417-WQH-BGS |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' SECOND MOTION TO COMPEL** |
| v. | |
| UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES CUSTOMS AND BORDER PROTECTION OFFICE OF BORDER PATROL, JANET NAPOLITANO, THOMAS S. WINKOWSKI, DAVID AGUILAR, ALAN BERSIN, KEVIN K. McALLEENAN, MICHAEL J. FISHER, PAUL A. BEESON, RICHARD BARLOW, RODNEY S. SCOTT, CHAD MICHAEL NELSON, AND DORIAN DIAZ, AND DOES 1 - 50,, | |
| Defendants. | |

## I.    BACKGROUND

On December 7, 2015 and December 8, 2015, counsel for Plaintiffs, Mr. McBride, and counsel for Defendants, Ms. Schweiner, jointly called the Court regarding a

discovery dispute in compliance with the Court's Chambers' Rules. (ECF No. 110 at 1-2.) During both calls, Plaintiffs sought permission to file a motion to compel regarding two documents identified in Defendants' privilege log they believed were improperly withheld on the basis of the official information and deliberative process privileges. (ECF No. 110 at 3.) The two documents at issue are (1) U.S. Customs and Border Protection Use of Force Review Report ("Use of Force Review Report") (bates numbers Deft-1164-1183) and (2) Recommendations of the CBP Use of Force Incident Review Committee, Recommendations of the Police Executive Research Forum (PERF)("Recommendations Report") (Deft 1184-1226).

The Court granted the parties permission to brief the issue of privilege and ordered Defendants to lodge their privilege log and disputed documents for *in camera* review. (*Id.* at 3-4) Plaintiffs filed a Second Motion to Compel Production of Purportedly Privileged Documents on December 18, 2015 (ECF No. 113), and Defendants filed their opposition on December 24, 2015. (ECF No. 117.) Plaintiffs replied on December 28, 2015. (ECF No. 120.)

## II.   PARTIES' ARGUMENTS

Plaintiffs argue that Defendants have not validly asserted the official information privilege[1] or the deliberative process privilege in response to Plaintiffs' RFPs, and therefore, the Court should deem the privileges waived without an *in camera* review. (ECF No. 113 at 4.) Specifically, Plaintiffs argue that Defendants did not timely submit a declaration from a responsible official within their agency, as required under *Hampton*. (ECF No. 113 at 3.) Plaintiffs also state that because the documents at issue are not predecisional and deliberative, they are not subject to the protection of the deliberative process privilege. (*Id.* at 5.) Moreover, Plaintiffs assert that their "interests as civil-rights litigants outweigh any governmental interest in maintaining the secrecy of any

---

[1] Plaintiffs' brief analyzes the official information privilege. The Court notes, however, that Defendants' privilege log does not claim either document is protected by the official information privilege. (*See* ECF No. 114-3 at 9.)

1   deliberative process." (*Id.*)

2          Defendants argue that the documents at issue are protected from disclosure by the

3   deliberative process privilege.  (ECF No. 117 at 3.)  In support of this assertion,

4   Defendants submit the declaration from Christopher J. Hall, the Assistant Commissioner,

5   Office of Training and Development, United States Customs and Border Protection.

6   (ECF No. 117-1.)  In his declaration, Mr. Hall states that he has reviewed the two

7   documents in dispute: U.S. Customs and Border Protection Use of Force Review Report

8   ("Use of Force Review Report") (Deft-1164-1183) and (2) Recommendations of the CBP

9   Use of Force Incident Review Committee, Recommendations of the Police Executive

10  Research Forum (PERF)("Recommendations Report") (Deft 1184-1226).  (*Id.* at ¶2.)

11         According to Mr. Hall, both documents were prepared in response to former U.S.

12  Customs and Border Patrol ("CBP") Deputy Commissioner David V. Aguilar's 2012

13  directive that CBP conduct an "internal and external review of its policies, equipment,

14  tactics, training and operational posture with respect to the use of force."  (*Id.* at ¶ 3.)

15  Specifically, the Recommendations Report was prepared as part of the internal review

16  process, and reflects the responses and deliberations of CBP's operational entities

17  regarding their agreement or disagreement with the recommendations made by PERF.

18  (*Id.* at ¶ 4.)

19         The Use of Force Review Report was prepared by the Review Committee in

20  February 2013.  (*Id.* at ¶ 5.)  This report contains a series of recommendations regarding

21  CBP's use of force policy, training, equipment, tactics and operational posture.  (*Id.*)  The

22  report is the product, in part, of CBP's internal deliberations and debate concerning use of

23  force issues and PERF's use of force recommendations.  (*Id.*)

24  **III.    RELEVANT LAW**

25         The deliberative process privilege "protects materials created by administrative

26  agencies during the decision-making process."  *Nat'l Wildlife Fed'n v. United States*

27  *Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir. 1988).  The privilege applies to significant

28  policy decisions (*Chao v. Mazzola*, 2006 WL 2319721 *3 (N.D. Cal. Aug. 10, 2006) and

is meant to promote the quality of those decisions by "protecting from disclosure internal discussions which, if disclosed, would discourage the free-flow of ideas and 'frank discussion of legal or policy matters.'" *Bernat v. City of California City*, 2010 WL 4008361 *4 (E.D. Cal. Oct. 12, 2010) citing *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

In order to be protected by the deliberative process privilege, a document must be both predecisional and deliberative. *Hongsermeier v. C.I.R.*, 621 F.3d 890, 904 (9th Cir. 2010). A predecisional document is one "prepared in order to assist an agency decisionmaker in arriving at his decision" and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Assembly of California v. United States Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992). A predecisional document is a part of the "deliberative process" if "disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.* (internal citations omitted)

The party asserting the deliberative process privilege has the burden of establishing that it protects the material at issue. *North Pacifica, LLC v. City of Pacifica*, 274 F.Supp.2d 1118, 1121 (N.D. Cal. 2002). This requires, "(1) a formal claim of privilege by the head of the department possessing control over the requested information; (2) an assertion of the privilege based on actual personal consideration by that official; and (3) a detailed specification of the information for which the privilege is claimed, along with an explanation of why it properly falls within the scope of the privilege." *Coleman v. Schwarzenegger*, 2008 WL 2237046 *4 (E.D. Cal. May 29, 2008) (quoting *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135 (D.C. Cir. 2000)).

Once this showing is made, the court conducts a balancing inquiry regarding whether the litigant's need for the "materials and the need for accurate fact-finding override the government's interest in non-disclosure." *F.T.C.*, 742 F.2d at 1161. In

13cv1417-WQH-BGS

balancing the need for disclosure against the need for confidentiality, the Ninth Circuit has considered the following factors:  "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions."  *Id.*  Other factors courts may consider include:  "(5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law."  *North Pacifica, LLC*, 274 F.Supp.2d at 1122 (citing *U.S. v. Irvin*, 127 F.R.D. 169, 173 (C.D. Cal. 1989).  The  deliberative process privilege should be "strictly confined within the narrowest possible limits consistent with the logic of its principles."  *North Pacifica, LLC*, 274 F.Supp.2d at 1122.

## IV.   ANALYSIS

### a.   <u>Timeliness of Defendants' Declaration</u>

Plaintiffs argue that Defendants waived the ability to assert the official information privilege because they did not provide Plaintiffs with a declaration from an agency official when they provided their privilege log, and thus, did not "comply with the procedures outlined in *Hampton*."  (ECF No. 113 at 4.)  In a prior order, this Court declined to interpret *Hampton* as standing "for the proposition of automatic waiver of privilege if a declaration is not provided to the receiving party upon production of the privilege log."  (ECF No. 127 at 6.)

Plaintiffs later attempt to apply this argument of waiver to the deliberative process privilege—"Because Fisher has not validly asserted either the official information or deliberative process privilege in response to Plaintiffs' RFPs within the time prescribed by Rule 34, the Court should deem these privileges waived[.]"  (ECF No. 113 at 5.)  Plaintiffs' cite no authority for the proposition that the deliberative process privilege is waived if a declaration is not provided with the privilege log.  Moreover, as with the official information privilege, the Court likewise declines to adopt such a rigid guideline

for the deliberative process privilege.  *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) (noting that discovery rules are to be accorded a broad and liberal treatment). Accordingly, Defendants failure to provide Plaintiffs with a declaration in support of the official information privilege or deliberative process privilege at the time they provided the privilege log did not result in an automatic waiver of either privilege.

   b. **Sufficiency of Defendants' Declaration in Support of Deliberative Process**

Defendants have the burden of establishing that their documents are protected by the deliberative process privilege.  *North Pacifica, LLC*, 274 F.Supp.2d at 1121.  This requires, "(1) a formal claim of privilege by the head of the department possessing control over the requested information; (2) an assertion of the privilege based on actual personal consideration by that official; and (3) a detailed specification of the information for which the privilege is claimed, along with an explanation of why it properly falls within the scope of the privilege."  *Coleman*, 2008 WL 2237046 at *4 (quoting *Landry*, 204 F.3d at 1135).

   i. **A Formal Claim of Privilege by the Head of the Department Possessing Control Over the Requested Information**

In support of their assertion of privilege, Defendants provided a declaration from Christopher J. Hall, the Assistant Commissioner, Office of Training and Development, United States Customs and Border Protection.  (ECF No. 117-1.)  Mr. Hall's title indicates that he is not the head of the relevant agency—the Border Patrol.  However, at least one court has noted that, when interpreting the sufficiency of the declaration in support of the deliberative process privilege, it would be "counterproductive to read 'head of the department' in the narrowest possible way[.]"  *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135 (D.C. Cir. 2000) (citations omitted).  Instead, the "procedural requirements are designed to ensure that the privileges are presented in a deliberate, considered, and reasonably specific manner."  *Id.* (declining to require that assertion by the head of the overall department or agency is necessary to invoke the deliberative process privilege,

and citing cases supporting that conclusion).  This helps to ensure that the privilege is invoked by an informed executive official of sufficient authority and responsibility to warrant the court relying on his or her judgment.  *National Lawyers Guild v. Attorney General*, 96 F.R.D. 390, 396 (S.D.N.Y 1982).

According to Mr. Hall's declaration, his responsibilities include oversight of CBP's law enforcement training programs, leadership development, and CBP's use of force policy.  (ECF No. 117-1 ¶ 1.)  Given the scope of Mr. Hall's responsibilities, this Court finds that he has sufficient authority and knowledge to assure the court that the privilege is being presented thoughtfully and specifically.

## ii.  Based on Actual Personal Consideration by that Official

Mr. Hall's declaration states that he has "reviewed and [is] familiar with the following two documents: (1) U.S. Customs and Border Protection Use of Force Review Report ("Use of Force Review Report") (marked as Deft-1164 through Deft-1183); and (2) Recommendations of the CBP Use of Force Incident Review Committee, Recommendations of the Police Executive Research Forum (PERF) ("Recommendations Report") (marked as DEFT-1184 through Deft-1226).  Because Mr. Hall declares that he has personally reviewed the documents in dispute, the Court is satisfied that his declaration is based on his personal consideration of those documents.

## iii.  Detailed Specification of the Privilege and What Information is Protected by the Privilege

In order the meet their burden in asserting the deliberative process privilege, Defendants' declaration must contain a detailed specification of the privilege claimed, and the information purportedly protected.  *Coleman*, 2008 WL 2237046 at *4 (quoting *Landry*, 204 F.3d at 1135).  Mr. Hall's declaration explains that the Use of Force Review Report "contains a series of recommendations from a junior-level working group concerning CBP's use of force policy, training, equipment, tactics and operational posture."  (*Id.* at ¶ 5.)  According to Mr. Hall, the Use of Force Review Report "was the product, in part, of CBP's internal deliberations and debate concerning a multitude of use

13cv1417-WQH-BGS

of force issues and PERF's use of force recommendations." (*Id.*)

The Recommendations Report reflects the responses of CBP's operational entities to the recommendations made by PERF, and whether or not each agency agreed with the recommendations. (*Id.* at ¶ 4.) According to Mr. Hall, the report reflects the agency's internal deliberations, debate and recommendations regarding CBP's use of force policy and the changes proposed by PERF. (*Id.*)

Both documents were "prepared for, and reflected, CBP's internal debate and deliberations concerning changes proposed to its use of force policy." (*Id.* at ¶ 6.) As a result, according to Mr. Hall, disclosure of these documents "would expose CBP's internal decision-making process which occurred when it deliberated over whether to adopt the proposed recommendations of the PERF Report." (*Id.*)

The Court finds that Mr. Hall's declaration contains a detailed specification of the information for which the privilege is claimed as he identifies the two documents by title, content, and bates number. The Court also finds that Mr. Hall's declaration sufficiently explains why Defendants believe that these two documents properly fall within the scope of the privilege. Mr. Hall describes how the documents were used to inform policy decisions and that they reflect internal discussions and debate regarding proposed policy changes.

Because Defendants' declaration is sufficient to inform the analysis of deliberative process, the Court proceeds to analyze the merits of Defendants' claim of deliberative process privilege for each document.

### c. <u>U.S. Customs and Border Protection Use of Force Review Report</u>

The first document this Court will analyze is the U.S. Customs and Border Protection Use of Force Review Report ("Use of Force Review Report") (Deft-1164-1183). The Use of Force Review Report was prepared in February of 2013, in response to former CBP Deputy Commissioner David V. Aguilar's directive in 2012 that CBP conduct an internal and external review of its policies, equipment, tactics, training and operational posture regarding use of force. (ECF No. 117-1 ¶¶ 3-5.) According to Mr.

Hall's declaration, this document "contains a series of recommendations from a junior-level working group concerning CBP's use of force policy, training, equipment, tactics, and operational posture." (*Id.* at ¶ 5.) The Use of Force Review Report "was prepared for, and reflected, CBP's internal debate and deliberations concerning changes proposed to its use of force policy." (*Id.* at ¶ 6.) According to Mr. Hall, disclosure of this document "would expose CBP's internal decision-making process which occurred when it deliberated over whether to adopt the proposed recommendations of the PERF Report." (*Id.*)

### i. Predecisional

A predecisional document is one "prepared in order to assist an agency decisionmaker in arriving at his decision" and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Assembly of California*, 968 F.2d at 920. Moreover, "the agency must identify a specific decision to which the document is predecisional." *Id.* at 1094.

Mr. Hall's declaration asserts that the Use of Force Review Report is predecisional because it "was prepared for, and reflected, CBP's internal debate and deliberations concerning changes proposed to its use of force policy." (ECF No. 117-1 at ¶ 6.) The specific policy decision to which the document is predecisional, therefore, is the revised use of force policy within the CBP. Because this document reviews a series of recommendations from the Use of Force Incident Review Committee, those recommendations necessarily reflect the opinions of that committee, not the final policy of the agency. Accordingly, the Court finds that the Use of Force Review Report is predecisional.

### ii. Deliberative

A predecisional document is part of the deliberative process if "the disclosure of [the] materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's

ability to perform its functions." *Maricopa Audubon Soc. v. U.S. Forest Service*, 108 F.3d 1089, 1093 (9th Cir. 1997).

Plaintiffs question Defendants' characterization of this document as deliberative. (ECF No. 120 at 2.)  According to Plaintiffs, because the document is a review, it must have taken place after an event or series of events.  (*Id.*)  The Court disagrees with Plaintiffs' blanket contention.  A review can certainly be part of the deliberative process, and reflection is often required prior to making meaningful change.  As Mr. Hall's declaration explains, the Use of Force Review Report "[was] prepared for, and reflected, CBP's internal debate and deliberations concerning changes proposed to its use of force policy." (ECF No. 117-1 at ¶ 6.)  According to Defendants, disclosure of this document "would expose CBP's internal decision-making process which occurred when it deliberated over whether to adopt the proposed recommendations of the PERF Report." (*Id.*)  Because disclosure of the Use of Force Review Report would reveal internal agency discussions, which could discourage candid debate within the CBP, the Court concludes the Use of Force Review Report is deliberative.[2]

The Court has determined that the Use of Force Review Report is both predecisional and deliberative.  Therefore, the materials can only be disclosed if Plaintiffs' need for the materials and need for accurate fact-finding outweigh the government's interest in confidentiality.  *F.T.C.*, 742  F.2d at 1161.  In order to determine whether Plaintiffs' need for the materials and need for accurate fact-finding outweigh the government's interest in confidentiality, the Court will conduct a balancing analysis.

---

[2] Plaintiffs cite *Soto v. City of Concord*, 162 F.R.D. 603, 612–13 (N.D. Cal. 1995) and *Pittman v. County of San Diego*, 2010 WL 3733867, at *3 (S.D. Cal. Sept. 17, 2010) for the proposition that disclosure of documents "in civil rights cases against law enforcement agencies almost always outweighs any governmental interest in keeping confidential its deliberative processes."  (ECF No. 113 at 5.)  These cases, however, involve decisions and deliberations within local police departments—not policy discussions within a federal agency, as is the case here.  The *Soto* Court makes such a distinction when it says that "[t]he deliberative process privilege should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy."  *Soto*, 162 F.R.D. at 612. The Court finds that any revisions to a use of force policy within the Border Patrol is an important public policy, and *Soto* and *Pittman* are inapposite.

### iii.  Balancing of Factors to Decide Whether Disclosure is Appropriate

As discussed above, the Ninth Circuit considers the following factors in balancing the need for disclosure against the need for confidentiality: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions[,]" (*F.T.C.*, 742 F.2d at 1161) "(5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law." *North Pacifica, LLC*, 274 F. Supp.2d at 1122 (citing *U.S. v. Irvin*, 127 F.R.D. at 173.  Each factor will be discussed in turn.

### 1.  Relevance

Plaintiffs' complaint makes allegations regarding the conduct of two border patrol agents, and the supervisory liability of Defendant Fisher while he was Chief of CBP. Defendant Fisher's supervisory liability hinges on his knowledge of, and responsibility for, a de facto "rocking policy" by which agents respond with deadly force to the throwing of rocks by Mexican nationals, regardless of whether other, non-lethal means are available to avert any such risk.  (*See* ECF No. 61 at 1-2.)  Defendants argue that the Use of Force Review Report has "little relevance to the claims against [Defendant] Fisher because [it] go[es] to the deliberations about CBP's use of force policy – not the actual, final policy."  (ECF No. 117 at 5.)

Defendants' argument misses the mark.  A document reviewing the use of force policy within the Border Patrol would necessarily help to prove or disprove the existence of the purported rocking policy Plaintiffs allege.  Moreover, Plaintiffs must prove supervisory liability for the allegations regarding Defendant Fisher.  In the Ninth Circuit, a supervisor faces liability under the Fourth Amendment only where "it would be clear to a reasonable [supervisor] that his conduct was unlawful in the situation he confronted." *Chavez v. United States*, 683 F.3d 1102, 1110 (9th Cir. 2012) citing *Saucier v. Katz*, 533

U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part on other grounds by *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The content of the Use of Force Review Report, therefore, would also be relevant to show what knowledge Defendant Fisher had as a supervisor regarding incidents involving the use of deadly force in response to rock throwing, and the extent to which he was responsible for such a policy.  Accordingly, the Court concludes this document is relevant.

### 2.  Availability of Comparable Evidence from Other Sources

Plaintiffs' complaint distinguishes between two use of force policies: the policy in place in 2011 when the events giving rise to this action took place, and a revised policy implemented in May of 2014.  (*See* ECF No. 66 at ¶¶ 63 (regarding original policy) and 111 (regarding revised policy).)  Defendants argue that the *final* policy regarding use of force is comparable evidence to the Use of Force Review Report, and has already been produced in discovery.  (ECF No. 117 at 5.)  However, both policies are of limited importance if Plaintiffs cannot connect the dots as to why certain decisions were made, why certain provisions were added and others omitted.  The final policy is not, by this Court's estimation, comparable evidence to the internal review of the original policy. Without more, Plaintiffs are left to conjecture regarding changes to the new policy and what knowledge Defendant Fisher had prior to authorizing such changes.  This factor weighs heavily in favor of disclosure.  *See North Pacifica*, 274 F.Supp.2d at 1124 (noting that this factor is "perhaps the most important factor in determining whether the deliberative-process privilege should be overcome").

### 3.  Government's Role in the Litigation

In *United States v. Irvin*, the court found that the County's role in the litigation and the possibility that discovery would inhibit county officials' future communications militated against disclosure.  127 F.R.D. 169, 174 (C.D. Cal. 1989).  However, in *Newport Pacific, Inc. v. County of San Diego*, the court held that, given the nature and the seriousness of the allegations involved in the suit, it would "not subscribe to the theory

13cv1417-WQH-BGS

1    that the government's role as a party to the litigation mitigates in favor of nondisclosure."

2    *Newport Pac. Inc. v. Cty. of San Diego*, 200 F.R.D. 628, 640 (S.D. Cal. 2001).  Instead, it

3    was the "very nature of the allegations and the role of the government in the litigation

4    itself that tip[ped] the scales in favor of disclosure." *Id.* at 640.  Although the

5    government agencies are no longer parties in this case,[3] the Court finds that the nature of

6    Plaintiffs' allegations regarding constitutional violations by the chief of the Border Patrol

7    and the resulting policies within the agency militate toward disclosure.

8                      **4. Chilling of Agency Discussion**

9          Defendants argue that protecting this document from disclosure "will serve the

10   purpose of promoting candor in agency deliberations while allowing scrutiny of the final

11   decision[.]"  (ECF No. 117-6.)  Defendants cite *National Wildlife Fed'n v. United States*

12   *Forest Serv.*, for the proposition that "[i]t would be impossible to have any frank

13   discussions of legal or policy matters in writing if all such writings were to be subject to

14   public scrutiny."  861 F.2d 1114, 1117 (9th Cir. 1998).  While the Court acknowledges

15   the principle set forth in *National Wildlife*, that case involves an exception to the

16   Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(5), for "predecisional

17   documents."  *National Wildlife Fed'n*, 861 F.2d at 1115.  The FOIA exceptions were

18   intended to prevent the disclosure of certain types of information from the public

19   generally, not to create evidentiary privileges for civil discovery.  *Kerr v. U.S. Dist. Court*

20   *for N. Dist. of California*, 511 F.2d 192, 197-98 (9th Cir. 1975) aff'd, 426 U.S. 394, 96 S.

21   Ct. 2119, 48 L. Ed. 2d 725 (1976)(citations omitted).  Under FOIA, a document that is

22   predecisional and deliberative need not be disclosed.  *National Wildlife Fed.'n*, 861 F.2d

23   at 1117.  In the context of civil discovery, however, the inquiry extends beyond those two

24   factors to balance the interests of both parties.  *See e.g., Newport Pacific Inc.*, 200 F.R.D.

25   at 636; *North Pacifica, LLC*, 274 F.Supp.2d at 1120-20.  As a result, the *National*

26

27

28   [3] The Court, however, notes that the remaining defendants are represented by government counsel, which adds support to the conclusion that this litigation implicates government interests.

*Wildlife Fed'n* case is not instructive to the current analysis.

Defendants also cite *Robinson v. County of San Joaquin*, for the general proposition that disclosure of agency discussions protects those discussions and allows for "candor in formulating policy." (ECF No. 117 at 5-6 citing 2014 WL 1922827, at * (E.D. Cal. May 14, 2014).) But Defendants fail to articulate how disclosure of *this* document will chill agency discussion within the CBP.

In *Sanchez v. Johnson*, the court faced similar contentions regarding the chilling effect disclosure of documents would have on behind-the-scenes discussions. 2001 WL 1870308 *1 (N.D. Cal. 2001). There, the court held that disclosure of certain documents "intrude[d] minimally, and without prejudice, into agency deliberations." *Id.* at *4 n. 7. Similarly, *Price v. County of San Diego* held that the documents at issue should be produced and noted "the infringement upon the frank and independent discussions regarding contemplated policies and decisions by the County . . . can be alleviated through the use of a strict protective order." 165 F.R.D. 614, 620 (S.D. Cal. 1996).

This Court finds both *Sanchez* and *Price* persuasive. Defendants' concerns regarding the frankness of agency discussion does not weigh strongly against disclosure and can be mitigated through the use of the protective order.[4]

## 5. Interest in Judicial Fact-finding and Seriousness of Litigation Issues

The desirability of accurate fact-finding weighs in favor of disclosure. Although both Plaintiffs and Defendants fail to address this factor in their briefs, the Court notes that the allegations in Plaintiffs' complaint involve potentially serious constitutional violations by agents Nelson and Diaz as individuals and Defendant Fisher in his capacity as a supervisor. The seriousness of the issues involved magnifies the interest of the court and society in accurate fact-finding. *See Newport Pacific Inc.*, 200 F.R.D. at 640 (finding

---

[4] The parties were ordered to submit a protective order to this Court no later than February 10, 2016. (ECF No. 127 at 9.)

where the case alleged violations of federal constitutional magnitude the tendency is to allow discovery).  These factors support disclosure of the document.

### 6.  Issues of Alleged Government Misconduct and Federal Interest In Enforcement of Federal Law

Plaintiffs' complaint alleges Defendant Fisher's knowledge and approval of a purportedly unlawful rocking policy used by CBP agents generally, and Defendants Diaz and Nelson specifically, along the U.S./Mexico border.  (ECF No. 66 at ¶ 66.)  Such allegations necessarily involve misconduct by government agents and officials, as well as the federal interest in the enforcement of constitutional law.  These factors support disclosure.

### 7.  Conclusion of Factor Analysis

After balancing the above factors, this Court finds that Plaintiffs' need for disclosure outweighs Defendants' interest in the confidentiality of the Use of Force Review Report.  The document is relevant to Plaintiffs' claims in this case and not otherwise available to Plaintiffs.  Defendants' assertion of deliberative process regarding the Use of Force Review Report is **OVERRULED**.  Plaintiffs' Motion to Compel production of the Use of Force Review Report is **GRANTED**.  Defendants are ordered to produce this document subject to the protective order previously required in this case.[5] Defendants must produce the Use of Force Review Report **within seven (7) calendar days** of when the Court signs the protective order.

### d.  Recommendations Report

The second document this Court will analyze is the Recommendations of the CBP Use of Force Incident Review Committee, Recommendations of the Police Executive Research Forum (PERF) ("Recommendations Report") (marked as Deft -1184 through Deft-1226).  Like the Use of Force Review Report, this document was also prepared in

---

[5] The parties were ordered to submit a protective order to this Court no later than February 10, 2016. (ECF No. 127 at 9.)

response to former CBP Deputy Commissioner David V. Aguilar's directive in 2012 that CBP conduct an internal and external review of its policies, equipment, tactics, training and operational posture regarding use of force. (ECF No. 117-1 ¶ 5.) The internal review was performed by staff officers from the Office of Air and Marine, Office of Border Patrol, Office of Training and Development, Office of Chief Counsel, and Internal Affairs. (*Id.* at ¶ 3.)

The Recommendations Report was prepared as part of the internal use of force review process and reflects the responses of CBP's operational entities to PERF's recommendations. (*Id.* at ¶ 4.) CBP considered this document to be "Law Enforcement Sensitive," and deliberative when it was prepared in 2013. (*Id.*) This document "reflects the agency's internal deliberations, debate and recommendations with respect to CBP's use of force policy and the changes proposed by PERF." (*Id.*) According to Mr. Hall, this report was "used to frame the debate over the course of 2013 and 2014 to inform changes to the CBP Use of Force program." (*Id.*) Defendants state that disclosure of this document "would expose CBP's internal decision-making process which occurred when it deliberated over whether to adopt the proposed recommendations of the PERF Report." (*Id.*)

### i. Predecisional

As discussed in more detail above in section IV(c)(i), a "predecisional" document is one "prepared in order to assist an agency decisionmaker in arriving at his decision" and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Assembly of California*, 968 F.2d at 920. Mr. Hall's declaration indicates that the Recommendations Report is predecisional because it "reflects the agency's internal deliberations, debate and recommendations with respect to CBP's use of force policy and the changes proposed by PERF." (ECF No. 117-1 at ¶ 4.) Specifically, the Recommendations Report contains feedback from each operational entity regarding PERF's recommendations. These written entries reflect the opinions of

1   each operational entity, not the final policy of the agency.  Because the

2   Recommendations Report was prepared to assist CBP in arriving at their decision to

3   revise the use of force policy, and includes recommendations from operational entities

4   within CBP, the Court finds that it is predecisional.

5                    **ii.  Deliberative**

6            A predecisional document is a part of the "deliberative process" if "disclosure of

7   [the] materials would expose an agency's decisionmaking process in such a way as to

8   discourage candid discussion within the agency and thereby undermine the agency's

9   ability to perform its functions." *Assembly of California*, 968 F.2d at 920 (internal

10  citations omitted).  According to Mr. Hall, disclosure of the Recommendations Report

11  "would expose CBP's internal decision-making process which occurred when it

12  deliberated over whether to adopt the proposed recommendations of the PERF Report."

13  (ECF No. 117-1 at ¶ 6.)

14          As described in more detail above, the Court disagrees with Plaintiffs' blanket

15  contention that, because the document is a review, it must have taken place after an event

16  or series of events.  The Court agrees that disclosure of this document would expose

17  CBP's decisionmaking process and could discourage candid discussion within the

18  agency.  Because the Recommendations Report includes the reactions from multiple

19  operational entities regarding the proposed changes in policy sought by each

20  recommendation from PERF, the Court concludes it is deliberative.

21          The Court has determined that the Recommendations Report is both predecisional

22  and deliberative.  However, the materials can only be disclosed if Plaintiffs' need for the

23  materials and need for accurate fact-finding outweigh the government's interest in

24  confidentiality.  *F.T.C.*, 742  F.2d at 1161.

25                    **iii.  Balancing of Factors to Decide Whether Disclosure is Appropriate**

26          In balancing the need for disclosure against the need for confidentiality, this Court

27  applies the same factors described above in section IV(c)(iii).

28  ///

### 1. Relevance

The Recommendations Report involves the same subject matter as the Use of Force Review Report.  As was the case in section IV(c)(iii)(1), a document reflecting the opinions of multiple operational agencies regarding CBP's use of force policy necessarily speaks to the existence of a rocking policy, as well as Defendant Fisher's knowledge of this policy in his supervisory role.  The Court concludes this document is relevant.

### 2. Availability of Comparable Evidence from Other Sources

Defendants argue that the final policy regarding use of force is comparable evidence to the Recommendations Report, and the final policy has already been produced in discovery.  (ECF No. 117 at 5.)  As the Court explained above in section IV(c)(iii)(2), the revised policy does not constitute comparable evidence.  This factor weighs heavily in favor of disclosing the Recommendations Report.

### 3. Government's Role in the Litigation

As described above in section IV(c)(iii)(3), the nature of Plaintiffs' allegations regarding constitutional violations by the chief of the Border Patrol and the resulting policies within the agency militate toward disclosure.

### 4. Chilling of Agency Discussion

As above in section IV(c)(iii)(4), Defendants' concerns regarding the frankness of agency discussion does not weigh strongly against disclosure and can be mitigated through the use of the protective order.

### 5. Interest in Judicial Fact-finding and Seriousness of Litigation Issues

The desirability of accurate fact-finding weighs in favor of disclosure.  Plaintiffs' allegations of constitutional violations by Defendants magnifies the interest of the court and society in accurate fact-finding and supports disclosure of the document.

### 6. Issues of Alleged Government Misconduct and Federal Interest In Enforcement of Federal Law

As discussed above in section IV(c)(iii)(6), Plaintiffs' allegations regarding

13cv1417-WQH-BGS

1  Defendant Fisher's knowledge and approval of a purportedly unlawful rocking policy
2  used by the CBP agents along the U.S./Mexico border implicates alleged government
3  misconduct and the federal interest in the enforcement of constitutional law.  These
4  factors support disclosure.

### 7.  Conclusion of Factor Analysis

6  After balancing the above factors, this Court finds that Plaintiffs' need for
7  disclosure outweighs the government's interest in the confidentiality of the
8  Recommendations Report.  The document is relevant to Plaintiffs' claims in this case and
9  not otherwise available to Plaintiffs.  Defendants' assertion of deliberative process
10 regarding the Recommendations Report is **OVERRULED**.  Plaintiffs' Motion to Compel
11 production of the Recommendations Report is **GRANTED**.  Defendants are ordered to
12 produce this document subject to the protective order previously required in this case.[6]
13 Defendants must produce the Recommendations Report **within seven (7) calendar days**
14 of when the Court signs the protective order.

## V.    CONCLUSION

16 For the above mentioned reasons, Plaintiffs' Motion to Compel is **GRANTED.**
17 The parties were ordered to submit a protective order to this Court no later than February
18 10, 2016.  (ECF No. 127 at 9.)  Defendants must produce the Use of Force Review
19 Report and Recommendations Report **within seven (7) calendar days** of when the Court
20 signs the protective order.

22 IT IS SO ORDERED.

23 Dated:  February 9, 2016

24
25 Hon. Bernard G. Skomal
   United States Magistrate Judge

---

[6] The parties were ordered to submit a protective order to this Court no later than February 10, 2016. (ECF No. 127 at 9.)